# IN THE SUPREME COURT OF IOWA

No. 16–0661

Filed March 3, 2017

DUTRAC COMMUNITY CREDIT UNION and
KWIK TRIP, INC.,

      Appellees,

vs.

RADIOLOGY GROUP REAL ESTATE, L.C.,
SHAMROCK PROPERTIES, L.C.; DUFFY
FAMILY LIMITED PARTNERSHIP; BIGGER
BETTER BETTY BUILDING, L.L.C.; and
QUAD CITY OMS, L.C.,

      Appellants.

---

Appeal from the Iowa District Court for Scott County, Mark R. Lawson, Judge.

Defendants appeal the district court order granting summary judgment in favor of the plaintiffs on their declaratory judgment action. **AFFIRMED.**

Martha L. Shaff and Brandon W. Lobberecht of Betty, Neuman & McMahon, P.L.C., Davenport, for appellants.

Peter D. Arling and Tonya A. Trumm of O'Connor & Thomas, P.C., Dubuque, for appellees.

**ZAGER, Justice.**

We are asked to determine whether the district court properly granted the plaintiffs' motion for summary judgment. DuTrac Community Credit Union owns a parcel of real estate in Waterford Place, a commercial development located in Davenport, Iowa. DuTrac is now attempting to sell this parcel to Kwik Trip, Inc. As part of its due diligence, Kwik Trip discovered that the real estate was subject to a 1996 restrictive covenant that required the approval by an architectural control committee before any building or other structure could be erected. This committee consisted of two named individuals. One of the named members is deceased and the other named member has now either resigned from the committee or refuses to act on its behalf. DuTrac and Kwik Trip filed a declaratory judgment action asking the district court to declare the restrictive covenant unenforceable based on the doctrines of impossibility and supervening impracticability. The defendants filed a resistance and asserted the restrictive covenant could be made enforceable by modification. The district court granted the plaintiffs' motion for summary judgment. For the reasons set forth below, we affirm the judgment of the district court. We find the restrictive covenant cannot be enforced as written, the defendants' proposed modification is not a practical or effective way to carry out the original purpose of the covenant, and the covenant should be terminated.

## I. Background Facts and Proceedings.

DuTrac Community Credit Union (DuTrac) owns a parcel of real estate located in Davenport which is legally described as "Lot 6 and the Southerly 20 feet of Lot 5 of Waterford Place, an Addition to the City of Davenport, Scott County, Iowa." The land is located in an area more commonly known by the name of its development, Waterford Place. The

developer of Waterford Place was Cathedral Partners, a general partnership. Waterford Place consists of eighteen commercial lots. Kwik Trip, Inc. (Kwik Trip) is seeking to purchase the parcel of real estate owned by DuTrac. While investigating title to the real estate, Kwik Trip discovered a restrictive covenant that affects the land. The restrictive covenant states in its entirety,

> No building or other structure shall be erected on any lot in this addition without the approval of the architectural control committee consisting of David W. Lundy and/or Dennis J. Britt. This shall be interpreted to include approval of the structure, design, building materials, site plan, landscaping and signage.[1]

On September 4, 2015, DuTrac and Kwik Trip filed a petition for declaratory judgment naming seventeen defendants.[2] All of the defendants have an ownership interest in a parcel of real estate contained in Waterford Place.

On September 21, Defendant Hawkeye Real Estate Investment Co. filed an answer indicating it had no objections to the plaintiffs' petition. On October 6, these defendants—Radiology Group Real Estate L.C.; Shamrock Properties L.C.; Quad City OMS, L.C.; Duffy Family Limited Partnership; and Bigger Better Betty Building, L.L.C.—filed an answer to

---

[1]Originally, the restrictive covenant stated,

No building or other structure shall be erected on any lot in this addition without the approval of the architectural control committee consisting of David W. Lundy and Michael L. Duffy. This shall be interpreted to include approval of the structure, design, building materials, site plan, landscaping and signage.

[2]The named defendants were Radiology Group Real Estate, L.C.; Hawkeye Real Estate Investment Company; Spoden Commercial Properties, L.L.C.; St. Ambrose University; Scope Holdings, L.L.C.; 53rd & Eastern Properties, L.L.C.; Shamrock Properties, L.C.; ESK Davenport, L.L.C.; Quad City OMS, L.C.; JCO Properties, Inc.; QC Gums, L.L.C.; Duffy Family Limited Partnership; Bigger Better Betty Building, L.L.C.; JTG L.L.C.; Extol, L.L.C.; TJECC, LLC, d/b/a "TJECEE, L.L.C.; and WFM Properties, L.L.C.

the plaintiffs' petition denying the allegation that the restrictive covenant was unenforceable.[3]  Defendants St. Ambrose University and JTG, L.L.C. filed answers denying the invalidity of the restrictive covenant.  Both St. Ambrose and JTG later filed withdrawals of the previously filed answers and consented to entry of judgment as deemed equitable by the district court.  No other named defendant filed a responsive pleading with the court, and default judgments have been obtained against them.

In the petition for declaratory judgment, DuTrac and Kwik Trip allege that the restrictive covenant is no longer enforceable.  Specifically, DuTrac and Kwik Trip allege that the restrictive covenant is ambiguous so it may be interpreted as a matter of law.  Additionally, the restrictive covenant provides no process by which new members of the architectural control committee can or shall be added.  The restrictive covenant names two members to the committee.  However, David Lundy is deceased, and Dennis Britt has either resigned from the committee or refuses to act on its behalf.  Because the restrictive covenant does not provide a method for determining the succession of membership to the committee, DuTrac and Kwik Trip argue the committee is now effectively defunct.  DuTrac and Kwik Trip sought a judgment from the district court declaring the restrictive covenant unenforceable against them based on the doctrine of impossibility and the doctrine of supervening impracticability.

The surviving member of the architectural control committee, Dennis J. Britt, executed three separate affidavits with regard to his participation on the architectural control committee.  Britt executed the first affidavit on December 11, 2015, and stated that he had "no interest

---

[3]Only these named defendants appealed the district court's grant of summary judgment and will be referred to as the appellants throughout.  The other parties will be referred to by name.

in being a member of the [c]ommittee, and . . . no intention of making any decisions or taking any actions on behalf of the [c]ommittee." He further stated that he had no intention to act on behalf of the committee, and thus had "effectively resigned" from it. However, on December 16, Britt executed a second affidavit wherein he discussed the terms of his resignation from the committee by stating "[o]nce representatives are appointed, I will resign." Last, on February 16, 2016, Britt executed a third affidavit that appeared to reaffirm the statements from his first affidavit. He stated that he signed the second affidavit "in response to a hypothetical situation posed to [him]: namely, if [he] was still a member of the Committee, would [he] be willing to resign upon the appointment of new representatives?" He then clarified that the second affidavit did not affect his refusal to act on behalf of the committee and reaffirmed that he had effectively resigned from it.

On January 29, 2016, DuTrac and Kwik Trip filed an application for entry of default judgment against the remaining defendants who did not file any responsive pleadings. DuTrac and Kwik Trip also filed a motion for summary judgment that alleged there were no genuine issues of material fact as to the allegations contained in their petition for declaratory judgment. The motion for summary judgment requested that the district court declare the restrictive covenant unenforceable and terminate the restrictive covenant. The appellants resisted the motion for summary judgment. The appellants asserted a factual dispute existed as to the continued viability of the architectural control committee based on the multiple affidavits submitted by Britt. Accordingly, DuTrac and Kwik Trip could not establish, as a matter of law, an objective impossibility or a legally sufficient supervening impracticality to warrant the district court invalidating or declaring the

restrictive covenant unenforceable. Rather, the appellants argued that under the Restatement (Third) of Property the appropriate remedy was not to terminate the restrictive covenant, but to modify it. The appellants provided a proposed method to modify the restrictive covenant. Their proposal was to have all eighteen lot owners, or those willing to serve, act as the successor architectural control committee.

A hearing was conducted on the motion for summary judgment on March 10, and the district court issued its order granting summary judgment to DuTrac and Kwik Trip on March 17. The district court concluded that, due to the death and resignation or refusal to act of its designated members, the architectural control committee no longer existed. Accordingly, the district court found it was objectively impossible for DuTrac and Kwik Trip to comply with the restrictive covenant requiring approval of the architectural control committee prior to the erection of any building or structure. The district court also concluded it would be inappropriate to revise or modify the restrictive covenant. The district court declared that the restrictive covenant establishing an architectural control committee was invalid, unenforceable, and of no further force or effect. The appellants filed a timely notice of appeal, which we retained.

## II. Standard of Review.

We review a district court's grant of a motion for summary judgment for correction of errors at law. *Concerned Citizens of Se. Polk Sch. Dist. v. City of Pleasant Hill,* 878 N.W.2d 252, 258 (Iowa 2016). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Iowa Arboretum, Inc. v. Iowa 4-H Foundation,* 886 N.W.2d 695, 701 (Iowa 2016) (quoting *McKee v. Isle of Capri Casinos, Inc.,* 864 N.W.2d

518, 525 (Iowa 2015)). The district court's grant of a motion for summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Id.* (quoting Iowa R. Civ. P. 1.981(3)). There is a question of material fact "if reasonable minds can differ on how the issue should be resolved." *Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 5 (Iowa 2008) (quoting *Walker v. Gribble*, 689 N.W.2d 104, 108 (Iowa 2004)). On our review, we view the record in the light most favorable to the nonmoving party. *Iowa Arboretum*, 886 N.W.2d at 701.

### III. Analysis.

**A. Impact of Britt Affidavits.** The appellants argue that there is a genuine issue of material fact as to whether Britt resigned from the architectural control committee. The district court found that the question of whether Britt formally resigned or not was not a *material* fact in the case because neither party disputed that Britt refused to fulfill his obligations under the restrictive covenant.

A fact is material to a case when its determination would affect the outcome. *See, e.g., Homan v. Branstad*, 887 N.W.2d 153, 164 (Iowa 2016). A genuine issue of fact exists if reasonable minds may differ as to the resolution of the question at hand. *Id.* If only the legal consequences of undisputed facts are at issue, summary judgment is appropriate. *Id.*

We conclude that the effect of the multiple affidavits submitted by Britt is not reasonably in dispute and does not create a factual dispute. Whether Britt formally resigned from the committee or simply refuses to act, the result is the same. Regardless of the characterization, Britt is no longer fulfilling his obligations as a committee member under the restrictive covenant, nor does he intend to act in any way on behalf of the

committee. Likewise, as noted by the district court at the oral argument on the motion for summary judgment, the appellants acknowledged that nothing would be gained by a trial on the issue. We agree with the decision of the district court that the question of whether Britt resigned from the architectural control committee is not a question of material fact.

**B. Impossibility and Supervening Impracticability.** DuTrac and Kwik Trip argued on the motion for summary judgment that the architectural control committee had no members and therefore the restrictive covenant was unenforceable under the doctrines of impossibility or supervening impracticability. In response, the appellants argued that there was a disputed issue of material fact because it was unclear whether Britt had actually resigned from the committee.

We have previously recognized that restrictive covenants are contracts. *Fjords N., Inc. v. Hahn*, 710 N.W.2d 731, 735 (Iowa 2006); *see also Compiano v. Kuntz*, 226 N.W.2d 245, 249 (Iowa 1975) ("The restrictive covenants were agreements or promises and therefore contractual."). "Because restrictive covenants are contractual in nature, we apply contract-based rules of construction to interpret them." *Sky View Fin., Inc. v. Bellinger*, 554 N.W.2d 694, 697 (Iowa 1996); *see also Compiano*, 226 N.W.2d at 249.

Generally, when we interpret contracts, we look to the language contained within the four corners of the document. *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 615 (Iowa 2006). "In the construction of written contracts, the cardinal principle is that the intent of the parties must control, and except in cases of ambiguity, this is determined by what the contract itself says." Iowa R. Civ. P. 6.904(3)(*l*); *see also Peak v. Adams*, 799 N.W.2d 535, 543

(Iowa 2011). If the intent of the parties is clear and unambiguous from the words of the contract itself, we will enforce the contract as written. *Am. Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 329 (Iowa 1998).

If the language of the contract is ambiguous, then we engage in interpretation in order to determine "the meanings attached by each party at the time the contract was made." *Clinton Physical Therapy Servs.*, 714 N.W.2d at 615 (quoting E. Allan Farnsworth, *Contracts* § 7.9, at 458 (3d ed. 1999)). To the extent necessary to reveal the parties' intent, extrinsic evidence is admissible. *Id.* We do not find that the restrictive covenant is ambiguous.

In a similar case in Texas, two developers of a subdivision placed restrictive covenants on the property. *Hollis v. Gallagher*, No. 03–11–00278–CV, 2012 WL 3793288, at *1 (Tex. App. Aug. 28, 2012). One of the covenants provided that "[n]o two-story dwelling shall be permitted on lots 1–23 without the consent of the undersigned." *Id.* The "undersigned" were the two developers. *Id.* The Gallaghers purchased a lot in the subdivision and began constructing a two-story house. *Id.* After construction began, another lot owner, Hollis, brought suit to enforce the restrictive covenant. *Id.* The Gallaghers answered and asserted that the restrictive covenant was unenforceable due to the deaths of both developers. *Id.* at *2.

Utilizing the Restatement (Second) of Contracts, the court found that the defense of impossibility rendered the restrictive covenant unenforceable. *Id.* at *7. The developers did not leave a succession plan in the restrictive covenant, and the court found that "[t]he plain language of the restrictive covenant at issue made the developers 'necessary for

performance.'" *Id.* at *5 (quoting *Key Energy Servs., Inc. v. Eustace*, 290 S.W.3d 332, 340 (Tex. App. 2009)).

> Here, the text of the restrictive covenant is brief:

> No building or other structure shall be erected on any lot in this addition without the approval of the architectural control committee consisting of David W. Lundy and/or Dennis J. Britt. This shall be interpreted to include approval of the structure, design, building materials, site plan, landscaping and signage.

The language of the restrictive covenant itself is limiting in two important places. The first sentence of the covenant restricts the approval of the committee to buildings and structures "erected" on any lot in the Waterford Place development. The covenant goes on to explain what building activities require approval: "structure, design, building materials, site plan, landscaping and signage." Notably, the covenant does not require approval for activities outside the original construction of buildings or structures in the development.

The restrictive covenant also specifically names two members, David W. Lundy and Dennis J. Britt. It provides that the two could serve together or alone with the language "consisting of David W. Lundy and/or Dennis J. Britt." It does not, however, provide for any succession plan in the event both Lundy and Britt cease to serve on the committee. The restrictive covenant does not provide for any replacement member in the event either Lundy or Britt resigns, refuses to act, or dies.

The language of the restrictive covenant is limited and unambiguous. The written language of the restrictive covenant appoints two specifically named individuals, with no succession mechanism, thus limiting its duration. There is no mechanism to transfer authority to another member or to appoint new members to the committee. The language of the restrictive covenant further limits the approval process to

buildings and structures to be erected on lots in the development. The restrictive covenant does not address the approval process for other types of building on the lots, such as modifications, additions, or reconstruction.

The next step in our analysis is to determine whether DuTrac and Kwik Trip could comply with the terms of the restrictive covenant. The district court found that compliance could not be achieved under the doctrine of impossibility. We originally recognized the doctrine of impossibility of performance in *Nora Springs Coop. Co. v. Brandau*, 247 N.W.2d 744, 747 (Iowa 1976). In order to excuse nonperformance, the term must be objectively impossible to perform. *Id.* The impossibility of performance cannot be due to the fault of the nonperforming party. *Id.*

Similarly, we have also recognized the doctrine of discharge by supervening impracticability from the Restatement (Second) of Contracts. *Am. Soil Processing*, 586 N.W.2d at 330. The doctrine of discharge by supervening impracticability provides,

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 261, at 313 (Am. Law Inst. 1981); *see also Am. Soil Processing*, 586 N.W.2d at 330.

> This rule recognizes that even though a party in assuming a duty has not qualified the language of the party's undertaking, the court may still relieve the party of that duty "if performance has unexpectedly become impracticable as a result of a supervening event."

*Am. Soil Processing, Inc.*, 586 N.W.2d at 330 (quoting Restatement (Second) of Contracts § 261 cmt. *a*, at 313)).

Here, compliance with the approval process contained in the restrictive covenant was both impossible and impracticable. Under the doctrine of impossibility of performance, it was objectively impossible for the committee to meet to approve any buildings or structures. One member of the committee is deceased, and the other refuses to act on the committee's behalf. The committee has no acting members and no succession plan to appoint new members. DuTrac and Kwik Trip therefore argue that our analysis should end here. Because the existing restrictive covenant cannot be complied with, we should declare the covenant invalid and unenforceable.

**C. Restatement (Third) of Property.** However, because our cases analyzing restrictive covenants under contract law theories and the Restatement (Second) of Contracts date from the 1970s, and because we have never before held that a strict contractual impossibility or impracticability standard governs restrictive covenants, the appellants urge us to consider the restrictive covenant under the Restatement (Third) of Property: Servitudes. Section 7.10 provides a framework for analyzing the modification or termination of a servitude:

> (1) When a change has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created, a court may modify the servitude to permit the purpose to be accomplished. If modification is not practicable, or would not be effective, a court may terminate the servitude. Compensation for resulting harm to the beneficiaries may be awarded as a condition of modifying or terminating the servitude.

Restatement (Third) of Prop.: Servitudes § 7.10(1), at 394 (Am. Law Inst. 2000).

The comments to the rule expand on the rationale behind its adoption. Because servitudes—in this case, a restrictive covenant—

create valuable property rights, there are competing interests and concerns that the court must consider. *Id.* § 7.10 cmt. *a,* at 395. On one side, because of the potential for a servitude to be of unlimited duration, there is a risk that "absent mechanisms for nonconsensual modification and termination, obsolete servitudes will interfere with desirable uses of the land." *Id.* However, because important property rights are implicated, termination or modification should be approached with caution. *Id.*

We have applied the Restatement (Third) of Property: Servitudes to a case involving an easement. *See Gray v. Osborn,* 739 N.W.2d 855, 861 (Iowa 2007). And some time ago, we applied the recognized viability of the changed conditions doctrine under the First Restatement of Property (i.e., the indirect predecessor to the Third). *See Thodos v. Shirk,* 248 Iowa 172, 186–88, 79 N.W.2d 733, 741–43 (Iowa 1956). Thus, we have indicated that restrictive covenants can *terminate* due to changed conditions, even when a pure contractual approach might allow the covenant to continue. *Id.* Section 7.10 addresses a related but different question: whether a covenant can be modified to allow its original purpose to continue, even if it is not possible to implement that covenant according to its original terms.

1. *Purpose of restrictive covenant.* The first step under this test is to analyze the underlying purpose of the restrictive covenant and whether this purpose can still be accomplished. "The test is stringent: relief is granted only if the purpose of the servitude can no longer be accomplished." *Id.* § 7.10 cmt. *a,* at 395.

The restrictive covenant was created by the developer, Cathedral Partners, an Iowa general partnership managed by the Lundy Corporation. David W. Lundy was President of the Lundy Corporation.

The restrictive covenant included only Lundy and Britt as the members of the architectural control committee. It did not include any succession mechanism, nor did it provide for any input from any of the lot owners. It is clear that the principal purpose of the restrictive covenant was to benefit the developers by enhancing the marketability of the lots. The text of the restrictive covenant indicates that the purpose was for the developers to exercise control over the original construction of the development to maximize the value of the remaining lots. Of course, these kinds of covenants also presumably benefit at least some purchasers of the lots. The purchasers buy the lots because they appreciate that other construction in Waterford Place will not be totally uncontrolled, but will be subject to the review of the developers. Yet two decades have passed, and none of the current owners of lots in the development have, or ever had, any input or architectural control over any other lot in the development.

Once the purpose is identified, we must analyze whether it is "impossible as a practical matter to accomplish the purposes for which the servitude was created." *Id.* § 7.10(1). As discussed above, it is now impossible for the purpose of the restrictive covenant to be fulfilled. Lundy is deceased and Britt has either resigned or is refusing to act on behalf of the architectural control committee. There is no mechanism for succession or any means for appointing new or additional members to the committee. It is now impossible as a practical matter to accomplish the purpose for which the restrictive covenant was created—requiring control of construction by review of the developers.

2. *Modification or termination of restrictive covenant.* The second step of the test is to determine whether modification or termination is appropriate. The appellants argue the district court should have

modified the restrictive covenant under the Restatement (Third) of Property rather than declaring it unenforceable. They contend the district court should have appointed a new architectural control committee that included a representative of every lot owner in Waterford Place.

With regard to modification, the Restatement (Third) of Property provides that the "court may modify the servitude to permit the purpose to be accomplished. If modification is not practicable, or would not be effective, a court may terminate the servitude." *Id.* § 7.10(1), at 394. The modification or termination of the covenant is within the discretion of the district court. *Id.* The comment to this section explains,

> The changed-conditions rule has traditionally been used to terminate servitudes, rather than to modify them, but the less drastic step should be taken if modification would permit the servitude to continue to serve the purpose for which it was designed to an extent that it is worthwhile.

*Id.* cmt. *a*, at 395.

We agree with the district court that the modification proposed by the appellants is not, as a matter of law, a practicable or effective way to carry out the purpose of the restrictive covenant. As noted above, the covenant reserved control over construction to the developers only. No succession plan was set forth beyond the two named individuals, and the required approvals had no stated criteria and applied only to initial construction, not remodeling. We think the original covenant was thus intended by design to be a limited-duration restriction that would run its course once, as the developers presumably anticipated, all the lots were quickly sold. Instead, as sometimes happens, the development took a long time to reach full maturity.

We agree with the district court that a committee comprised of all eighteen of the lot owners, each of whom has its own economic interests,

is not comparable to the original covenant or a practical modification of it. With no standards to guide it other than the members' own interests, and with any ten owners wielding an absolute majority, such a committee could hamstring the sale of the remaining undeveloped lots—which would run directly contrary to the purpose of the original covenant. Since the proposed modification is not practical, we agree that the appropriate remedy in this case is the termination of the restrictive covenant.

### IV. Conclusion.

Under the Restatement (Third) of Property, circumstances have changed since the creation of the restrictive covenant which makes it impossible as a practical matter to accomplish the purpose for which the covenant was originally created. However, modification of the restrictive covenant, as proposed, is not practical, nor would it be effective to accomplish the original purpose of the restrictive covenant. Termination of the restrictive covenant was appropriate. We accordingly affirm the judgment of the district court granting summary judgment to DuTrac and Kwik Trip.

**AFFIRMED.**

All justices concur except Waterman, J., who takes no part.