# IN THE COURT OF APPEALS OF IOWA

No. 17-1544
Filed March 20, 2019

**CEI EQUIPMENT COMPANY,**
    Plaintiff-Appellant/Cross-Appellee,

**vs.**

**DONALD GADDIS and KAREN GADDIS,**
    Defendants-Appellees/Cross-Appellants.

_____

Appeal from the Iowa District Court for Linn County, Sean W. McPartland, Judge.

A manufacturer appeals a grant of summary judgment to former shareholders in an indemnity action. The former shareholders cross-appeal the denial of attorney fees. **REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

J. Scott Bardole of Andersen & Associates, West Des Moines, for appellant.

David M. Caves and William T. McCartan of Bradley & Riley PC, Cedar Rapids, for appellees.

Heard by Potterfield, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

CEI Equipment Company wants Donald and Karen Gaddis, one-time shareholders, to pay for its defense of products liability claims brought by an injured truck driver. More than three years before the driver sued CEI, the Gaddises sold their shares. In their stock purchase agreement (SPA), they agreed to several indemnification clauses with varying time limitations. The Gaddises now say CEI's request for indemnification is untimely under the SPA. Finding the SPA's unambiguous language did not include a time limit for this indemnification action, we reverse the grant of summary judgment in favor of the Gaddises, reverse the denial of CEI's motion for summary judgment, and remand to the district court for further proceedings. And, because the Gaddises are not the prevailing party in the summary judgment proceeding, we affirm the denial of attorney fees.

## I.    Facts and Prior Proceedings

The material facts are not in dispute. The Gaddises previously owned shares in CEI, a truck trailer design and manufacturing company. On December 17, 2012, they sold their shares to Normandie Holdings, LLC, under a detailed SPA. The SPA included terms indicating the Gaddises would indemnify CEI in the event of certain claims against them.

On December 26, 2014, truck driver Barry Willets was injured when an auger manufactured by CEI broke away from its trailer and fell on top of him. In May 2016, he sued CEI, alleging defects in the auger's design and manufacturing.[1]

---

[1] Willets also filed negligence claims against Quam Contracting, L.L.C., which had purchased the truck and trailer from CEI in April 2012. Willets settled his claims in their entirety in September 2017. The Gaddises also initiated a third-party claim against Travelers Indemnity Company and Travelers Property Casualty Company of America.

In July 2016, CEI answered Willets's claims and filed a third-party petition against the Gaddises seeking to enforce the indemnity provisions of the SPA and for breach of contract. CEI insisted because the auger at issue was manufactured before the Gaddises sold their shares, they have a contractual obligation to indemnify CEI.

Contending CEI's claims were time-barred under the SPA's indemnification provisions, the Gaddises sought summary judgment. CEI filed its own motion for summary judgment seeking an order that the Gaddises indemnify it against the claim. The district court granted the Gaddises' motion, denied CEI's motion, and dismissed the Gaddises from the action. The Gaddises filed an application for attorney fees against CEI, asserting the indemnity and breach-of-contract claims were frivolous. The district court denied their application.

CEI appeals the district court's rulings on the cross motions for summary judgment; the Gaddises cross-appeal the denial of attorney fees.

## II. Scope and Standards of Review

We review rulings on motions for summary judgment for correction of legal error. *Deeds v. City of Marion*, 914 N.W.2d 330, 339 (Iowa 2018). Summary judgment is proper if Gaddises established no genuine issue of material fact existed and they were entitled to judgment as a matter of law. *See id.* Summary judgment is also proper where the only issue to be decided is what legal consequences follow from otherwise undisputed facts. *Emmet Cty. State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989).

## III. Analysis

### A. Summary Judgment Ruling

CEI's third-party claim against the Gaddises arises from the SPA's indemnification clause, which states:

> 6.1 <u>Indemnification by the Sellers</u>. The respective representations, warranties and covenants contained herein or in any Transaction Document shall survive the Closing . . . . [T]he Sellers, jointly and severally, covenant and agree with Buyer to pay and perform, and to indemnify Buyer, . . . and hold them harmless from, against and in respect of any and all costs, losses, claims, liabilities, fines, penalties, damages and expenses . . . (collectively, "Sellers' Indemnified Liabilities") incurred by any of them, resulting from, arising out of, or in connection with any or all of:
> (a) Any breach of any of the representations or warranties made in <u>Article III</u> hereof . . . ; or
> (b) Any Liability of the Company arising during or attributable to the time period prior to the Closing Date . . .

On appeal, the Gaddises do not dispute that CEI's liability in the Willets's underlying lawsuit falls within the sellers' indemnified liabilities in section 6.1 of the SPA. Instead, they contest their obligation to indemnify because they allegedly received CEI's claim outside the applicable timeframe set out in section 6.2. Section 6.2 outlines four different claims periods, depending on the type of liability.[2]

> 6.2 <u>Time Limitations</u>. . . . [T]he Sellers shall have no obligation to indemnify any Buyer Indemnified Party hereunder based upon, or alleged to be based upon, any of Sellers' Indemnified Liabilities for **[1]** (i) Tier III Matters as to which the Seller Representative has not received a claim to indemnification prior to the end of the sixteenth (16th) month following the Closing Date, **[2]** (ii) Tier II Matters as to which the Seller Representative has not received a claim to indemnification prior to the end of the sixtieth (60th) month following the Closing Date and **[3]** (iii) Tier I Matters as to which the Seller Representative has not received a claim for indemnification prior to the expiration of the applicable statute of limitations period. **[4]** The claims period for any covenants,

---

[2] At oral argument, neither party could explain the policy underlying the different time limitations.

agreements or undertakings made by the Parties in this Agreement other than those specifically limited above shall survive the Closing for the applicable statute of limitations.

Those time limitations are the crux of this appeal. The parties agree the product liability claims for which CEI seeks indemnity do not implicate Tier I or Tier II matters, as those are defined in the SPA.[3] The Gaddises contend Willets's claims involved Tier III matters,[4] governed by the sixteen-month limitation, because they arose under a section of the SPA, not listed as a Tier I or Tier II matter, entitled "Product and Service Warranties; Product Liabilities."[5] Because the Gaddises did not receive CEI's claim for indemnification by April 17, 2014 (the closing date of December 17, 2012, plus 16 months), they no longer had an obligation to indemnify the buyer based on any of the sellers' indemnified liabilities.

The district court rejected the Gaddises' interpretation, finding:

> [D]espite what the section title may suggest, section 3.24 plainly did not involve the Gaddises representing to their buyers that they would remain liable for third-party customers' product liability claims.

---

[3] Tier I matters include claims for indemnification for breaches of the representation and warranties in sections of the SPA addressing corporate matters, bank accounts, transaction documents, and marketable title. Tier II Matters encompass claims for indemnification for breaches of the representation and warranties in sections of the SPA addressing taxes and environmental matters.

[4] Tier III matters are those "relating to or arising in connection with actual or alleged breaches of representations or warranties other than Tier I Matters and Tier II Matters."

[5] Section 3.24 provides:

> Except as set forth in Section 3.24(a) of the Sellers Disclosure Schedule, the Company does not make any express warranty or guaranty as to goods sold, or services provided by, the Company, and there is no pending or, to the Knowledge of the Sellers, threatened claim alleging any breach of any such warranty or guaranty other than as reserved for on the Balance Sheet or for immaterial claims made in the ordinary course since the Balance Sheet date. Except as set forth in Section 3.24(b) of the Sellers Disclosure Schedule, the Company does not have any material liability under such warranty. The Company does not have any Liability (and there is no basis for any present or future action or claim giving rise to any Liability) not covered in full by applicable insurance arising out of any injury to individuals or property as a result of the ownership, possession, or use of any product manufactured, sold, leased or delivered by the Company.

Rather, the Gaddises represented to their buyer that the Company made no warranties as to goods sold or services provided and that they were aware of no such pending claims pending.

We agree with the district court that the indemnification claim at issue did not fall into the Tier III category. Instead, the last sentence of section 6.2 governs the indemnity CEI seeks for Willets's claims. Under that catch-all category, the claims period for indemnification "shall survive the Closing for the applicable statute of limitations."

That language is the sticking point. Both sides insist the wording unambiguously supports their position. We start with the applicable statute of limitations. Here, Willetts had two years to bring his products-liability action against CEI from the time of his injury. *See* Iowa Code § 614.1(2) (2016) (requiring actions for injuries to a person, whether based on contract or tort, to be brought within two years "after their causes accrue"); *see Franzen v. Deere & Co.*, 334 N.W.2d 730, 732 (Iowa 1983) (discussing discovery rule and two-year statute of limitations in products liability case). The next question is when did the period for CEI to seek indemnification from the Gaddises for Willets' products liability claim expire.

The Gaddises argued the two-year limitations period commenced at the closing date for their stock sale, December 17, 2012, and ended on December 17, 2014. Therefore, the claim period expired before the date of Willets's injury on December 26, 2014, along with the Gaddises' obligation to indemnify.

But CEI urged a different reading of the SPA. The company emphasized the difference between Tier II and Tier III matters—which referenced the "Closing Date" as a starting point for a fixed claim period of sixth and sixteenth months respectively—and the catch-all language providing that claims period survived the

"Closing" for the applicable statute of limitations.[6] CEI asserted: "Since Closing Date was used twice in paragraph 6.2 it certainly could have been used again in paragraph 6.2 and the fact that it was not used in the catch-all section shows that there was no intent to use the Closing Date as a time reference for catch-all claims." CEI noted the statute of limitations at section 614.1(2) provides its own starting date: the accrual of the cause of action. In CEI's view, the period for its indemnity claim ran from the date of Willets' injury on December 26, 2014, for the applicable two-year statute of limitations, until December 26, 2016.

Finding the contract language unambiguous, the district court sided with the Gaddises. The court reasoned that CEI's position that it could "seek indemnification as long as the third-party claim has not been barred by the relevant statute of limitation following the injury" would mean "the Closing Date language" was "simply irrelevant" and the phrase "survive the Closing" would be "superfluous." The court also believed CEI's interpretation violated "principles of fairness" by creating an indefinite indemnification trigger. CEI's interpretation, the court concluded, was contrary to the intent of the parties in imposing time limitations for indemnity.

On appeal, CEI counters the district court's reasoning, renewing its previous argument. In response to the court's concern that contract language would be rendered superfluous, CEI points out the term "Closing Date" does not appear in the catch-all paragraph. Rather, the phrase "survive the Closing for the applicable

---

[6] The SPA defines "Closing" to mean "the consummation of the actions described in Section 1.4 and 1.5 of this Agreement"—i.e., the delivery of the shares and payment. The SPA further defines "Closing Date" as "the date on which the 'Closing' occurs."

statute of limitations" provides an indefinite period of indemnity, in contrast to the defined limitations set out in the SPA for Tier II and Tier III matters.[7] In response to the district court's fairness concern, CEI notes the SPA was an arms-length transaction with both parties represented by counsel. CEI insists: "The SPA says what it says and it does not anchor the beginning of the applicable statute of limitations to the closing date."

"Generally, when we interpret contracts, we look to the language contained within the four corners of the document." *DuTrac Cmty. Credit Union v. Radiology Grp. Real Estate, L.C.*, 891 N.W.2d 210, 216 (Iowa 2017). "In the construction of written contracts, the cardinal principle is that the intent of the parties must control, and except in cases of ambiguity, this is determined by what the contract itself says." Iowa R. App. P. 6.904(3)(n). "If the intent of the parties is clear and unambiguous from the words of the contract itself, we will enforce the contract as written." *DuTrac, Cmty. Credit Union*, 891 N.W.2d at 216. "[W]e give effect to language of the entire contract in accordance with its commonly accepted and ordinary meaning." *Dickson v. Hubbell Realty Co.*, 567 N.W.2d 427, 430 (Iowa 1997). "[I]t is assumed that no part of [the contract] is superfluous and an interpretation that gives a reasonable meaning to all terms is preferred to one that leaves a term superfluous or of no effect." *Id.*

---

[7] CEI also renewed its argument from the district court that the Gaddises' obligation to indemnify would not be infinite because Iowa Code section 614.1(2A) creates a fifteen-year statute of repose—commencing on the date that the aggrieved party first purchased the product or installed it for use. *See Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 91 (Iowa 2002).

In this case, despite two strong, competing views on how to read the same passage, neither party believes the language of the SPA is ambiguous. We agree we can decipher the parties' intent from the "four corners of the document." *See Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001) (explaining language is not ambiguous "merely because the parties disagree about its meaning").

Reading the plain language used in the catch-all category, we find the parties intended to extend the indemnity-claims period for product-liability actions from the date of their accrual through the end of the two-year limitations period. In other words, the Gaddises' duty to indemnify lasts until the statute of limitations applicable to Willets's underlying claim runs. To interpret the language otherwise would be to apply a new meaning to the phrase "applicable statute of limitations." A statute of limitations is not a free-floating length of time; it is a period with a defined beginning and end. The defined beginning is when the cause accrues. Iowa Code § 614.1. If the parties had intended the SPA's closing date to serve as the starting point for a two-year limitation, the drafters could have constructed the catch-all sentence to match the Tier II and Tier III limits. To give full effect to all terms of the contract, we must recognize a difference in the catch-all provision's reference to survival of the "Closing" instead of identifying a set time period following the "Closing Date."

Unlike the district court, we do not find CEI's reading of the SPA to unfairly allocate future liability between the parties. We are persuaded by the following commentary to the ABA Model Stock Purchase Agreement:

> It is customary for an acquisition agreement to specify the time period within which a claim for indemnification must be made. The Sellers want to have uncertainty eliminated after a period of time, and the

> Buyer wants to have a reasonable opportunity to discover any basis for indemnification. The time period will vary depending on factors such as the type of business, the adequacy of financial statements, the Buyer's plans for retaining existing management, the Buyer's ability to perform a thorough investigation prior to the acquisition, the method of determination of the purchase price, and the relative bargaining strength of the parties. A two-year period may be sufficient for most liabilities because it will permit at least one post-closing audit and because, as a practical matter, many hidden liabilities will be uncovered within two years. However, *an extended or unlimited time period for* stock ownership, capitalization, *products liability,* taxes, ERISA issues, and environmental issues *is not unusual.*

Leigh Walton, *Selected Provisions of the ABA Model Stock Purchase Agreement*, SL054 ALI-ABA 897, 970 (1995), § 10.5 cmt. (emphasis added.). We have no evidence of the relative bargaining strength of the Gaddises in reaching the terms of the SPA. But we are not prepared to say that their acceptance of an extended or indefinite time period for indemnifying products liability claims would violate "principles of fairness" or "defeat the reasonable intent of the contract."

Parties bargain and provide consideration as they deem fit. Courts cannot "rescue" a party from a "bad bargain." *Walker v. Gribble*, 689 N.W.2d 104, 110 (Iowa 2004). Rather,

> [c]ourts should support agreements which have for their object the amicable settlement of doubtful rights by parties. Such agreements are binding without regard to which party gets the best of the bargain or whether all the gain is in fact on one side and all the sacrifice is on the other.

*Id.* (edited for readability). Here, we cannot be sure of the calculus involved in the exchange of consideration for the SPA, but the intent of the parties is reflected in its plain language. We conclude, as a matter of law, CEI's indemnity claim against the Gaddises was not limited to the two years following the date of closing. Rather the indemnity claim period extended beyond the closing—ending when the statute

of limitations ran for the underlying claim, subject to the statute of repose. Willets's injury occurred on December 26, 2014, and he filed his claim against CEI in May 2016, within the applicable statute of limitations. CEI timely invoked the Gaddises' duty to indemnify in July 2016. There are no remaining issues of material fact, but the Gaddises were not entitled to judgment as a matter of law. We reverse the order for summary judgment in favor of the Gaddises and remand to the district court for entry of orders denying the Gaddises' motion and granting CEI's motion.

## B.  Attorney Fees

We also affirm the district court's denial of the Gaddises' request for attorney fees. The Gaddises are no longer the prevailing party. And even if they were, their reliance on Iowa Code section 625.22 was misplaced. The statute's first paragraph allows recovery on a written contract that contains an agreement to pay attorney fees. The SPA contained no provision for recovery of attorney fees. The statute's second paragraph is limited to actions to recover payment on a dishonored check or draft as defined in Iowa Code section 554.3014. *See* Iowa Code § 652.22 (allowing successful defendant in dishonored-check case to recover reasonable fees if court determines action was frivolous). This litigation did not involve collection on a dishonored check, so the Gaddises could not have recovered under that statute in any scenario.

## IV. CONCLUSION

For the preceding reasons, we reverse the grant of summary judgment in favor of the Gaddises and remand for entry of an order denying their motion for summary judgment. We also reverse the denial of CEI's motion and remand for entry of an order granting its motion for summary judgment, as well as any further

proceedings that may be necessary. We affirm denial of the application for attorney fees.

**REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**