# IN THE COURT OF APPEALS OF IOWA

No. 18-0371
Filed May 1, 2019

**WOODRUFF CONSTRUCTION, LLC,**
        Plaintiff-Appellant,

**vs.**

**STEVEN P. CHRISTENSEN, Individually and D/B/A CHRISTENSEN CONSTRUCTION COMPANY,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Dickinson County, David A. Lester,

Judge.


        Woodruff Construction, LLC appeals the judgment entered following trial on

the parties' breach-of-contract claims.  **AFFIRMED.**


        Ernest Kersten, Fort Dodge, and Jerry L. Schnurr III of Schnurr Law Firm,

P.C., Fort Dodge, for appellant.

        Richard Meyer of Fillenwarth & Fillenwarth, Estherville, for appellee.


        Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Woodruff Construction, LLC (Woodruff) appeals the district court order entering judgment in favor of Steven P. Christensen and Christensen Construction Company (Christensen) on its breach-of-contract counterclaim. Woodruff challenges the district court's finding that Woodruff breached its contract with Christensen. Woodruff also challenges the court's damage award.

Polaris Industries contracted with Christensen to construct an addition onto its manufacturing plant in Spirit Lake. Christensen subcontracted with Woodruff to complete a portion of the work. The parties signed a written agreement that states Woodruff was to complete a counterfort wall[1] by no later than December 2, 2013, and a retaining wall by no later than December 19. Woodruff did not complete work on the counterfort wall until January 20, and it never completed the retaining wall.

In August 2015, Woodruff filed a petition claiming Christensen breached the contract by failing to pay for the completed work. In May 2016, Christensen filed an amended answer and counterclaim alleging Woodruff was negligent and that it breached the contract in failing to complete construction properly and timely pursuant to the plans and specifications. A two-day bench trial was held in January and February 2017. The matter was deemed submitted for final ruling after briefing was completed in March 2017. In January 2018, the district court entered a written ruling finding that both parties had breached the contract. The court determined

---

[1] A counterfort wall is a retaining wall with counterforts or buttresses on the back or thrust-receiving side. *See* Webster's Third New International Dictionary 519 (unbar. ed. 2002).

the amount of Woodruff's damages to be $84,132.86 and the amount of Christensen's damages to be $78,813.

On appeal, Woodruff contends there is insufficient evidence to support a finding that it breached its contract with Christensen. To succeed on a claim of breach of contract, a party must show:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 706 (Iowa 2016) (citation omitted). Because this action was tried at law, our review is for correction of errors at law. *See* Iowa R. App. P. 6.907. We are bound by the district court's fact findings if supported by substantial evidence. *See* Iowa R. App. P. 6.904(3)(a).

The district court found each party had proved the first four elements of a breach-of-contract claim. With regard to Woodruff's claim, the court found that Woodruff completed construction of the counterfort wall, "albeit late and not according to the specifications set forth in the contract." It noted that Christensen and Polaris had accepted Woodruff's work because the addition was completed, and therefore, it concluded that Christensen's refusal to pay for the completed work constituted a breach of the contract. With regard to Christensen's counterclaim, the court found that Woodruff "did not come close to meeting" the deadline for completing the counterfort wall specified in the contract and never constructed the retaining wall. It further observed that

> Woodruff did not comply with the specifications set forth in the contract including the type of forms used, the length of each section of wall that was poured, the providing of a rebar free area and a void

in the forms, and putting trash and debris from their work into a dumpster at the site.  All of the foregoing, the court concludes, constitutes breaches by Woodruff of the terms of the parties' written contract.

The bulk of Woodruff's claims concern its defense that it could not perform under the deadlines of the contract based on circumstances beyond its control—namely, the bitterly cold winter weather and Christensen's conduct.[2]  In a lengthy ruling, the district court provided a detailed summary of the evidence presented at trial and concluded that neither the weather nor Christensen's performance excused Woodruff from meeting the contract deadline.  Specifically, the court found that Christensen's performance "only temporarily delayed Woodruff's performance, at most, and does not serve as a basis for excusing Woodruff's wholesale failure to meet the deadlines set forth in the contract or to excuse its failure to perform the work it did in the manner specified in the contract."  It further

---

[2] Woodruff refers to "the principle of force majeure."  "Force majeure" refers to "an event that can be neither anticipated nor controlled."  *Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 440 (Iowa 2008) (quoting Black's Law Dictionary 657 (7th ed. 1999)).  The Iowa cases on this proposition relate to contracts that contain a "force-majeure clause"—a clause that "allocate[es] the risk if performance becomes impossible or impracticable as a result of an event or effect that the parties could not have anticipated or controlled."  *Id.* (citation omitted).  As our supreme court has noted, "A force-majeure clause is not intended to shield a party from the normal risks associated with an agreement."  *Id.*

Even if a contract provides no such clause, "the court may still relieve the party of that duty 'if performance has unexpectedly become impracticable as a result of a supervening event.'"  *Am. Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 330 (Iowa 1998) (citation omitted).  Referred to as "the doctrine of discharge by supervening impracticability," it applies when an event that the parties assumed would not occur at the time of contracting arises and makes performance impracticable through no fault of the nonperforming party.  *DuTrac Cmty. Credit Union v. Radiology Grp. Real Estate, L.C.*, 891 N.W.2d 210, 217 (Iowa 2017).

In its answer to Christensen's counterclaim, Woodruff alleged its timely performance was impossible due to Christensen's conduct and the bitterly cold winter weather.  Therefore, we analyze Woodruff's claim under the doctrine of impossibility of performance.  Under the doctrine of impossibility of performance, a party's failure to perform under the contract is excused when performance is rendered impossible due to no fault of the nonperforming party.  *See id.*  "In order to excuse nonperformance, the term must be objectively impossible to perform."  *Id.*

found that Woodruff could have reasonably anticipated the weather conditions when it signed the contract and agreed to meet the deadlines provided. Most importantly, the court found that "Woodruff could have met the deadlines in the contract had it directed more manpower and time to the Polaris project but, for reasons not provided in the record, chose not to do so." There is ample evidence to support the trial court's findings. Because it was not objectively impossible for Woodruff to perform, neither the weather nor Christensen's conduct excuse its failure to do so. *See DuTrac Cmty. Credit Union*, 891 N.W.2d at 217.

Woodruff also challenges the finding that it failed to provide a void in the forms and failed to put trash and debris in a dumpster. With regard to Woodruff's duty to provide a void for anchor bolts, the agreement states that Woodruff "must provide . . . a void in the forms." Woodruff's West Region President testified that the forms Woodruff used did not allow it to set voids for anchor bolts. Christensen's construction superintendent testified that the counterfort wall constructed by Woodruff did not contain voids as required by the contract. Christensen's president testified that Christensen spent days cleaning excess concrete off the anchor bolts at a cost of $3200. The district court found sufficient corroborating testimony to support Christensen's claim for compensation. We agree.

With regard to additional cleanup costs, Woodruff claims that at the end of its work, it took all forms and trash to the dumpster Christensen provided, and when the dumpster was full, it stacked the remaining trash neatly next to the dumpster. Christensen's president testified that Woodruff abandoned "big slanted wood forms" that were "probably 20, 24 foot tall or something" and Christensen had to pay $1600 to have them removed to a landfill. Christensen also charged

$450 for "picking up some more of the mess that Woodruff left behind." Citing the testimony, the court found the record supported an award of $2050 for the cost of cleanup. Substantial evidence supports this finding.

Woodruff objects to the district court's award of $6270 to Christensen for gel patching the counterfort wall to fill holes and honeycombing caused by Woodruff's defective work. The district court based this award on the testimony and photographs showing the extent of the patching work required. Woodruff alleges the damage award was "based on mere speculation and conjecture" because when asked how many square feet of the total wall had honeycombing, the construction superintendent testified, "I couldn't even give you a guess." However, Christensen's president testified that the labor charge for the repair work amounted to $6270. "There is a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages." *St. Malachy Roman Catholic Congregation of Geneseo v. Ingram*, 841 N.W.2d 338, 352 (Iowa 2013) (citation omitted). Because "there is proof of a reasonable basis from which the amount can be inferred or approximated," the damage award was not overly speculative. *Id.* (citation omitted).

Woodruff alleges the court erred in awarding Christensen $9474 toward bond premiums it had to pay due to a mechanic's lien filed by Woodruff. The court noted that Polaris required Christensen to post a bond to get the mechanic's lien released from its property because the dispute was between Christensen and Woodruff. Because it ultimately found both parties were entitled to some amount of compensation for damages arising from that dispute and that each was partially successful in prosecuting its claim, the district court held each party responsible

for one-half of the bond premiums paid. The $9474 awarded to Christensen comprises Woodruff's share of the bond premiums. The district court acted within its discretion in awarding Christensen damages for half the amount of the bond premiums. *See Hawkeye Motors, Inc. v. McDowell*, 541 N.W.2d 914, 917 (Iowa Ct. App. 1995) ("The determination of the amount of damages in a bench trial ordinarily lies within the sound discretion of the trial court.").

Woodruff also objects to the district court's award of $55,709 to Christensen based on concessions Christensen made to Polaris because of additional charges Polaris incurred in the building's construction. The record shows that other contractors billed Polaris $55,709 in additional costs due to "incomplete and uncoordinated concrete structure and layout through January 25, 2014." Because the damage award is within the range of the evidence, we affirm. *See id.* at 918 ("An award of damages within the range of the evidence will not be disturbed on appeal.").

**AFFIRMED.**