# IN THE COURT OF APPEALS OF IOWA

No. 23-0647
Filed July 3, 2024

**SPRING CREST TOWNHOMES WDM, LLC,**
      Plaintiff-Appellee/Cross-Appellant,

**vs.**

**MICKLE ELECTRIC & HEATING CO., INC. d/b/a MICKLE ELECTRIC & HEATING, LLC,**
      Defendant-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Dallas County, Charles C. Sinnard,

Judge.


        A subcontractor appeals a ruling determining that it breached a construction

contract.  The developer cross-appeals the ruling awarding the subcontractor an

offset for unbilled labor.  **AFFIRMED ON APPEAL AND CROSS-APPEAL.**


        Billy J. Mallory and Trevor A. Jordison of Mallory Law, West Des Moines,

for appellant/cross-appellee.

        John F. Fatino and Parker Howe of Whitfield & Eddy, P.L.C., Des Moines,

for appellee/cross-appellant.



        Heard by Ahlers, P.J., and Chicchelly and Buller, JJ.

**AHLERS, Presiding Judge.**

After a developer terminated a contract with a subcontractor, the two parties disagree over who breached the contract and is responsible for the additional cost incurred by the developer to hire a new subcontractor to finish the job.

## I.     Background Facts and Prior Proceedings

Spring Crest Townhomes WDM, LLC (Spring Crest) contracted with Mickle Electric & Heating, LLC (Mickle) to complete electrical work on three buildings within its townhome development.  The contract provided that Mickle had twenty-one days from "the date of commencement" to complete all work.  The contract defined the date of commencement as "the date that the Construction Manager notifies the Subcontractor in writing or email when the work is to commence."

As to the start date, Mickle's written bid, which was incorporated into the terms of the written contract between the parties, included a note stating, "if you choose to go with us, please let me know as soon as possible.  We would like to get material ordered."  Shortly after the contract was signed, representatives from the two companies had a phone conversation wherein Mickle shared it wanted to get to work right away because it had workers waiting for work.  Ultimately, Mickle began work within a day or two after the contract was finalized despite not receiving notification in "writing or email" stating that work was to begin.  As the contract was signed by Mickle on April 19, 2021, and by Spring Crest on April 20, and Mickle started work on the project within a day or two, the electrical work would have needed to be completed by around May 14 if the twenty-one-day period had begun to run.

The electrical work was not completed by that time. Spring Crest provided Mickle with extensions to complete the work. But on August 3, Spring Crest's construction manager confronted Mickle in a text message noting no one from Mickle was doing any electrical work on the project. A Mickle employee responded by email, noting that Mickle was behind schedule because the townhomes were not ready for the trim work when its employees went to install it. She then provided Spring Crest with a "loose schedule" for the remaining electrical work. Under that schedule, work on one townhome would be completed on August 12 with the rest of the work on the other townhomes completed by August 31.

But by August 12, work on the first townhome was not completed as provided for in the schedule provided by Mickle's employee. That was the final straw for Spring Crest. Its attorney sent a letter to Mickle on August 13, informing Mickle that it had until 4:00 p.m. on August 15 to complete all outstanding work. Mickle did not complete the work by August 15. On August 16, Spring Crest sent notice to Mickle that it was terminating their contract for cause. Spring Crest contracted with two other electricians to complete the remaining electrical work on the townhomes.

Spring Crest then brought this action against Mickle to recover the difference between its contracted cost with Mickle and the amount it spent to have the townhomes finished by the different electricians. Mickle responded with a bill to Spring Crest for work it had completed before termination of the contract but had yet to bill. It brought a counterclaim against Spring Crest for payment for those amounts.

The case proceeded to a bench trial. The district court determined that Mickle breached the contract and awarded Spring Crest damages. However, the court offset that award by the amount Mickle was due for work completed prior to Mickle's termination. The court determined that, under the contract, Spring Crest was the prevailing party entitled to attorney fees.

Mickle appeals, arguing it did not breach the contract and that Spring Crest is not the sole prevailing party entitled to attorney fees. Spring Crest cross-appeals, arguing that the court erred by awarding Mickle an offset for unbilled work.

## II.    Standard of Review

"[O]ur review of the district court's contract interpretation and construction is at law." *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 683 (Iowa 2020). "The district court's factual findings have the effect of a special verdict and are binding on us if supported by substantial evidence." *Metro. Prop. & Cas. Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 924 N.W.2d 833, 839 (Iowa 2019). "We view the evidence in the light most favorable to the judgment when a party argues the trial court's ruling is not supported by substantial evidence." *Meincke v. Nw. Bank & Tr. Co.*, 756 N.W.2d 223, 227 (Iowa 2008). "Evidence is substantial when reasonable minds accept the evidence as adequate to reach a conclusion." *Id.* "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Id.* (citation omitted).

## III.    Discussion

Generally, when interpreting a contract, we look to the language used within the four corners of the document. *DuTrac Cmty. Credit Union v. Radiology Grp.*

*Real Est., L.C.*, 891 N.W.2d 210, 216 (Iowa 2017). "In the construction of written contracts, the cardinal principle is that the intent of the parties must control, and except in cases of ambiguity, this is determined by what the contract itself says." *Id.* (citation omitted). When the parties' intent "is clear and unambiguous from the words of the contract itself, we will enforce the contract as written." *Id.* "If the language of the contract is ambiguous, then we engage in interpretation in order to determine 'the meanings attached by each party at the time the contract was made.'" *Id.* (citation omitted).

### A. Mickle's Appeal

### 1. Breach of contract

Mickle contends that the district court erred in concluding it breached the contract for three reasons: (1) Spring Crest never sent written notice of commencement, so the twenty-one-day clock never began; (2) it was impossible for Mickle to perform within twenty-one days; and (3) Spring Crest actually breached when it terminated the contract.

We find it unnecessary to resolve Mickle's claim that the twenty-one-day clock never began to run. This is because the district court appropriately found an independent basis for Spring Crest to terminate the contract. Under section 6.3 of the contract, Spring Crest had the right to terminate the contract if Mickle "at any time and for any reason" failed to perform its work under the contract "in a diligent, efficient, timely, workmanlike, safe and careful manner."

There is no dispute Mickle began working on the project within a day or two after both parties signed the contract in April, yet Mickle had not completed its part of the project by early August. While Spring Crest may have been dissatisfied with

the timeliness of Mickle's work even earlier, there is no question Spring Crest notified Mickle of its dissatisfaction no later than August 2 when it notified Mickle of upcoming deadlines it had to meet and it would accept "NO EXCUSES" for Mickle not getting its work done. There is also no question that Mickle then provided Spring Crest with a schedule Mickle created to complete the project by August 31. Despite providing this new schedule over three months after starting the project and the new schedule contemplated a period to complete the project that exceeded the twenty-one days for project completion called for by the contract, Mickle missed the very first deadline provided for in its new schedule. This was the final straw that caused Spring Crest to deem Mickle in default and exercise its right under section 6.3 to give Mickle a forty-eight-hour notice to cure the default. Mickle did not cure the default after receiving the notice, entitling Spring Crest to terminate the contract. The district court's finding that Mickle breached the contract is supported by substantial evidence, so we are bound by it. *See* Iowa R. App. P. 6.904(3)(a).

We turn next to Mickle's contention that it was impossible to complete the work in a timely manner and therefore its failure to do so does not constitute a breach of the contract entitling Spring Crest to terminate it. "In order to excuse nonperformance, the term must be objectively impossible to perform. The impossibility of performance cannot be due to the fault of the nonperforming party." *DuTrac*, 891 N.W.2d at 217 (internal citation omitted).

Mickle did not persuade the district court that it was prevented from performing, and the district court's finding is supported by substantial evidence. Section 2.2.3 of the contract required Mickle to "immediately notify the

Construction Manager of any . . . problems that would cause a delay . . . under [its] phase of work." So under the terms of the contract, Mickle was required to inform Spring Crest of any issues that would delay its work. But nothing in the record establishes Mickle informed Spring Crest it could not complete the electrical work due to delays caused by others.

The only evidence in the record that Mickle informed Spring Crest that it could not complete its work due to lack of progress by others is an email from the Mickle office manager sent on August 3 in response to Spring Crest demanding completion with "NO EXCUSES." In that email, Mickle's representative claimed Mickle went to complete trim work during "the weeks of 7/19, 7/26 & 8/2 but the units weren't ready." This falls short of establishing that it was impossible for Mickle to complete the work within the allotted time, particularly because the contract required Mickle to inform Spring Crest of any delays, which would have allowed Spring Crest to intervene with the other trades to help keep the project on schedule. Furthermore, the email raising claimed delays for the first time also included a new schedule created by Mickle for completing the project, but, as previously noted, Mickle failed to follow that schedule too with no claim that its failure was caused by others.

Finally, the replacement electrical contractor who finished the work after Spring Crest terminated the contract with Mickle testified that it was able to complete its work immediately after taking over the project. This evidence further refutes Mickle's claim that it was hampered by others in fulfilling its contractual obligations. The district court's finding that it was not impossible for Mickle to fulfill

its contractual obligation is supported by substantial evidence, and we are bound by it. *See* Iowa R. App. 6.904(3)(a).

For the same reasons we find Mickle breached the contract and Spring Crest properly terminated it, we reject Mickle's contention that Spring Crest breached the contract. Accordingly, we affirm the district court's ruling determining that Mickle breached the contract and awarding damages to Spring Crest.

### 2. Attorney Fees

Next, Mickle challenges the district court's determination that Spring Crest is the sole prevailing party and entitled to attorney fees under the contract. It reasons that because the district court also determined that Mickle is entitled to an offset to cover work it had completed but not billed prior to termination of the contract, both parties prevailed and it should not be responsible for Spring Crest's attorney fees.

Section 11.2 of the contract provides, "The prevailing party in any legal proceeding related to this Agreement, shall be entitled to payment of reasonable attorney's fees, costs, and interest at the legal rate." Our supreme court considered similar language in *NCJC, Inc. v. WMG, L.C.*, 960 N.W.2d 58 (Iowa 2021). The contract in that case stated, "If either party files suit to enforce any of the terms of this Lease, the prevailing party shall be entitled to recover court costs and reasonable attorney's fees." *NCJC, Inc.*, 960 N.W.2d at 62. Our supreme court emphasized the use of "*the* prevailing party" makes clear only a singular party can be the prevailing party rather than multiple parties. *See id.* That same singular language is used here, meaning either Spring Crest *or* Mickle can be *the* prevailing party, not both as Mickle contends. While the district court did award Mickle an

offset, ultimately Spring Crest prevailed as a whole after establishing Mickle breached the contract. Accordingly, we agree with the district court that Spring Crest was the prevailing party for purposes of awarding attorney fees under the contract.

We affirm the district court.

### B.    Cross-Appeal

We turn our attention to Spring Crest's cross-appeal. It argues "[t]he district court erred in offsetting the amount due [to] Spring Crest based upon Mickle's unbilled invoices." Mickle provided the court with a list of hours Mickle employees worked on the project between the time Spring Crest had paid its prior invoice and termination of the contract. Its representative testified that the unbilled labor amounted to 171 hours of work at a rate of $80 per hour. And section 6.3.1 of the contract provided that should the contract be terminated then Mickle would be entitled to an offset for work that it had completed prior to termination for which it had not yet been paid.

But Spring Crest contends that "the work was never billed because it was worthless and [Mickle's representative] knew it." It highlights testimony from one of the electricians who finished up the electrical work after Spring Crest terminated the contract with Mickle. That individual testified that he had to redo some of the work that was done by Mickle because it was not done correctly. Yet nothing in the record establishes that the unbilled work was the work that had to be redone. Regardless, we are bound to affirm the district court if its findings are supported by substantial evidence. *See Metro. Prop. & Cas. Ins. Co.*, 924 N.W.2d at 839. We agree with the district court that the terms of the contract dictate that Mickle is

entitled to an offset for its labor completed after the work itemized on the last invoice and prior to termination of the contract. While reasonable minds could differ on the value of that labor, we conclude the district court's valuation of the offset is supported by substantial evidence, so we affirm on the cross-appeal.

**AFFIRMED ON APPEAL AND CROSS-APPEAL.**